United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL RAY JOHNSON,

        Petitioner,

  vs.

TOM CAREY, Warden,

        Respondent.

No. C 02-3018 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. The matter is submitted.

## BACKGROUND

      Petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Santa Clara of two counts of vehicle theft. *See* Cal. Vehicle Code § 10851 (a). With enhancements for prior offenses, he was sentenced to prison for twenty-five years and eight months to life. He unsuccessfully appealed his conviction to the California Court of Appeal, and that court also denied a state habeas petition which he filed with the direct appeal. The Supreme Court of California denied his petition for review of the affirmance on direct appeal and the denial of the habeas petition.

      As grounds for habeas relief, petitioner asserts that: (1) The prosecutor violated his due process rights by suppressing exculpatory impeachment evidence and knowingly presenting the false testimony of a key witness; (2) the prosecutor committed misconduct

by lying to the jury in closing argument about whether a key witness had been given a favorable plea bargain in return for testimony; and (3) his trial counsel was ineffective in specified ways.

Petitioner was employed as a service agent at Avis Rental Company on North First Street in San Jose. Ex. B2 (Reporter's Transcript) at 21, 53. On January 27, 1998, at about 2:00 a.m., Edward Cruz, a manager at the Avis airport location, stopped at a gas station near the Avis maintenance facility. Ex. G (Court of Appeal Opinion) at 1. As he pulled into the gas station, he observed two males putting gas into a maroon Chevy Malibu. *Id.* at 2. Cruz recognized the license plate number as an Avis car. *Id.* The two men did not look like they belonged together. *Id.* Cruz became suspicious and drove to the airport location to check the status of the car. *Id.* The computer showed that the car had not been rented and should have been at the lot. *Id.* Cruz notified police and went back to the gas station. *Id.* The police were at the gas station when Cruz arrived. *Id.* When Cruz spoke to the police, he told them he wanted to go to the First Street lot to double-check the car's status. *Id.*

As he left the gas station, he observed petitioner drive another maroon Chevy Malibu out of the First Street Avis lot. *Id.* Cruz recognized him as a service agent for Avis. *Id.* Petitioner looked like he was going to turn into the gas station, but did not. *Id.* There were six police cars there. *Id.* Cruz noted the license plate and went to check the status of the car petitioner was driving. *Id.* The computer indicated that the car should have been at the lot. *Id.* The two Chevy Malibu's were designated for the maintenance area where petitioner worked. *Id.* Petitioner did not have permission to have the car or give it to anyone else. *Id.*

Neal Williamson and Darryl Goeas were the two men in the Chevy Malibu who were arrested. Ex. A (Clerk's Transcript) at 202. Williamson testified that he knew petitioner was employed at the Avis facility and paid petitioner $80 a week to allow Williamson to use the maroon Chevy belonging to Avis. Ex. G at 3. Williamson got the car two days earlier from petitioner. *Id.* Williamson was not concerned about being caught in a stolen car because

petitioner told Williamson he could arrange that the car would not be reported stolen because he had access to Avis computers. *Id.* Williamson had no contract with Avis for the car. *Id.* Williamson also had a blue Chevy Malibu earlier for the use of which he paid petitioner. *Id.*

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

1  determination will not be overturned on factual grounds unless objectively unreasonable in
2  light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at
3  340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

4  When there is no reasoned opinion from the highest state court to consider the
5  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,
6  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th
7  Cir.2000).

**DISCUSSION**

**B.   Issues Presented**

**1.   *Brady* Claim**

Petitioner contends that his due process rights were violated when the prosecutor failed to disclose exculpatory evidence.

### a.   Standard

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence is favorable to the accused when it undermines the credibility of a prosecution witness. *United States v. Bagley*, 473 U.S. 666, 667 (1985). A prosecutor's failure to disclose favorable evidence is not a violation of due process unless the suppressed evidence was also material. *Brady*, 373 U.S. at 87. Favorable evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Bagley* at 682.

"There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

### b.   Analysis

Neil Williamson, the homeless man who paid petitioner $80 a week to use one of

4

1  Avis' cars, testified against petitioner at his trial, which ran from February 17 to February
2  23, 1999.  Williamson had pleaded no contest to vehicle theft as a result of a plea bargain
3  on June 16, 1998.  Pet., ex. J (decl. Charlie Gillian, Williamson's defense attorney).  The
4  "understanding" underlying the plea was that if Williamson cooperated, the prosecutor
5  "would report such cooperation to the sentencing judge."  *Id.*  The court found to be true the
6  allegation that Williamson had suffered a prior "strike" conviction on October 29, 1998.  *Id.*
7  At Williamson's first sentencing date on January 22, 1999, the prosecutor asked that
8  sentencing be postponed until a date by which petitioner's trial would be over, said that he
9  had fully cooperated at petitioner's preliminary hearing, and that at sentencing she would
10 urge the court to strike Williamson's prior and sentence him to time served.  *Id.*

11 In his letter to petitioner's appellate counsel which is in the record, Williamson's
12 counsel says he told Williamson that "no promises would be given either in writing or on the
13 record in court.  I further told him that any such promises would diminish his value as a
14 witness.  I told him that he should expect some benefit from his cooperation, however, the
15 extent of the benefit was never discussed prior to his cooperation at the preliminary
16 hearing."  *Id.*, ex. A at ¶ 1.  In his declaration, Williamson's counsel put it this way:  "There
17 was never any promise made prior to Mr. Williamson's cooperation at the preliminary
18 examination of Mr. Johnson."  *Id.*, ex. J at ¶ 6.

19 At petitioner's trial the prosecutor brought out that Williamson had not yet been
20 sentenced and that no promises had been made to him in return for his testimony.  Ex.
21 106-07.  Petitioner's counsel brought out that Williamson was free on his own
22 recognizance, despite a bad criminal record, and had not been sentenced – the implication
23 being that sentencing was being postponed to see what testimony Williamson provided,
24 and thus that Williamson had a strong motivation to please the prosecution.  *See id.* at 109.
25 In closing defense counsel placed great emphasis on Williamson's motivation to lie to
26 please the prosecution*. Id.* at 127-32.

27 As a preliminary matter, the court notes that there is no evidence in the record that
28 disclosure was not made to petitioner's counsel.  But leaving that aside, petitioner still has

5

failed to establish a violation of his *Brady* rights.

Although it does appear that the prosecution agreed with Williamson's counsel that any cooperation by Williamson would be "reported to the sentencing judge," pet., ex. A at ¶ 1, petitioner did not suffer any prejudice. At trial defense counsel brought out the very favorable treatment Williamson was receiving, and emphasized it in closing argument. Given that, and the fact that petitioner was actually seen driving one of the stolen cars when he had no right to be doing so, there was not a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *See Bagley* at 682 (standard).

Because there was no violation of petitioner's rights as to this claim, the state courts' rejection of it was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### 2. Presentation of Perjured testimony

Petitioner also contends that his due process rights were violated when the prosecutor knowingly presented perjured testimony to the jury. Petitioner claims that Williamson lied on the stand when he stated that the prosecution did not promise him anything in return for his cooperation.

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). For the reasons discussed above, there is no reasonable likelihood that Williamson's testimony that he had received no promises from the prosecutor, even if it is deemed to be in some sense misleading, affected the judgment of the jury. Petitioner thus was not prejudiced.

The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### 3. Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in misconduct by lying when she

told the jury in closing argument that Williamson was being treated "the same way" and was "far from off the hook." *See* ex. B3 at 137. Respondent contends that this claim is barred by the doctrine of procedural default and that there was no misconduct.

### a. Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or if he can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In order to establish that a fundamental miscarriage of justice would result from an application of procedural default a petitioner has to prove factual innocence. *Gandarela v. Johnson*, 275 F.3d 744, 749-50 (9th Cir. 2002); *Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001).

The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 296 F.3d 752, 763 (9th Cir. 2002). "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's." *Id.* at 762.

Respondent contends that counsel's failure to object to the prosecutor's argument bars this claim, because a timely admonition from the trial court could have cured any error.

1  The California Court of Appeal agreed. Ex. G at 5-6.

2  Under California law, claims of prosecutorial misconduct must be objected to at trial
3  in order to be preserved upon appeal. *People v. Fosselman*, 33 Cal. 3d 572, 580-81
4  (1983). That California's contemporaneous objection rule operates as a procedural bar has
5  been recognized by Ninth Circuit. *Davis v. Woodford*, 384 F.3d 628, 653-54 (9th Cir.
6  2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

7  The respondent has adequately pled the existence of an independent and adequate
8  procedural bar. Under *Bennett* this shifts the burden to the petitioner. *See* 296 F.3d at
9  762. He has, however, not demonstrated the inadequacy of the state procedure to serve
10 as a bar, for instance by providing citations showing inconsistent application. The claim is
11 procedurally defaulted.

12 Petitioner having made no attempt to show cause and prejudice for the default, or to
13 show that failure to consider the claim will result in a fundamental miscarriage of justice, the
14 court concludes that this claim is barred by the procedural default. However, the court will
15 also consider the merits of the claim below, as an alternative ground for the result.

16 **b.   Merits**

17 Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate
18 standard of review is the narrow one of due process and not the broad exercise of
19 supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due
20 process rights are violated when a prosecutor's misconduct renders a trial "fundamentally
21 unfair." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process
22 analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the
23 culpability of the prosecutor"). Claims of prosecutorial misconduct are reviewed "'on the
24 merits, examining the entire proceedings to determine whether the prosecutor's remarks so
25 infected the trial with unfairness as to make the resulting conviction a denial of due
26 process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

27 Here, the prosecutor responded to the defense counsel's suggestion that Williamson
28 lied to get out of trouble. The prosecutor stated,

> Though he told you that there had been no promises, there's no deals struck here with the prosecution. If there had been, that is required to be handed over to the defense, and they would have been able to introduce it as evidence. There has been no evidence of any kind of deal.
>
> And Mr. Gordon [defense counsel] characterizing Mr. Williamson as lying himself out of trouble, far from it. He has already pled guilty or no contest and been treated the same way; he's far from off the hook. But he has admitted his share of responsibility. Far from lying himself out of prison. If he took the stand and committed perjury, he'd be lying himself potentially into prison on perjury charges.

Ex. B3 at 137.

The California Court of Appeal held that the prosecutor's statements regarding Williamson being treated "the same way" and not being "off the hook" are reasonably interpreted to mean that Williamson was "treated the same way" as any other individual who had entered a plea admitting guilt. Ex. G at 5.

"A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations." *Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998). Prosecutorial comment must be examined in context. *Id.* at 745.

Although the prosecutor's remarks may have been ambiguous, they did not render the trial "fundamentally unfair," and it certainly was not unreasonable for the California Court of Appeal to interpret the remarks as it did. Because this claim is barred by procedural default, because petitioner's rights were not violated by the prosecutor's comment, and because the court of appeal's treatment of this issue was reasonable, habeas relief is unavailable.

**3.    Ineffective Assistance of Counsel**

Petitioner contends that he was denied effective assistance of counsel in several respects.

    **a.    Standard**

To prove ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing

9

professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In addition, the defendant must affirmatively establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

### b. **Failure to investigate**

Petitioner contends that his attorney was ineffective by failing to investigate whether any promises of leniency were made to Williamson, thus weakening his cross-examination. First, petitioner has not established that counsel did not investigate. Secondly, counsel was able to impeach Williamson without an investigation, as discussed in the first section above. His counsel zealously argued that Williamson was biased in his testimony in favor of the prosecution. Counsel conveyed to the jury that Williamson had yet to be sentenced, and that his release on his own recognizance influenced his testimony. Petitioner has failed to establish that counsel was deficient in failing to investigate, and, even assuming counsel did not investigate, petitioner has failed to show a reasonable probability that the result of the proceeding would have been different if he had. Because petitioner's Sixth Amendment rights were not violated, the state courts' rejection of it was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### c. **Failure to call expert witness**

Petitioner contends that his attorney was ineffective by failing to call a local criminal defense attorney as an expert witness who could have testified how unusual the prosecutor's lenient treatment of Williamson was. He contends that the expert's testimony would have undermined Williamson's credibility.

10

Although counsel did not call an expert to establish the prosecutor's lenient treatment of Williamson, counsel was able to vigorously argue this point, as discussed above. Given that and the strong evidence against petitioner, there was not a reasonable probability that the result of the proceeding would have been different if counsel had called an expert witness. Because petitioner was not prejudiced, there was no Sixth Amendment violation as to this claim.

### d.     Failure to object

Petitioner contends that his attorney was ineffective by failing to object to the prosecutor's purported misconduct during closing argument. He alleges that the prosecutor vouched for Williamson's credibility when "she asserted that a six-time felon would look askance at committing perjury to stay out of prison," pet. at 27, and that her statements that 'Williamson was 'not lying himself out of trouble, far from it' and that Williamson was being 'treated the same way' and 'not off the hook'" were references to facts not in evidence.

This claim was presented on direct appeal as part of petitioner's argument that the prosecutor's remarks were misconduct, addressed above. The court of appeal noted that an attorney may choose not to object for many reasons, so failure to object is rarely ineffective assistance, and that the "record before us does not eliminate the possibility that counsel's decision not to object" was a tactical choice. Ex. G at 6.

The issue was also raised in petitioner's state habeas petition, where an attached email from petitioner's counsel stated that it is his general practice not to object during closing argument unless the prosecutor's conduct is particularly egregious or harmful to the client. Ex. F (state habeas pet.), attached ex H.

A difference of opinion as to trial tactics does not constitute denial of effective assistance. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984); *Weygandt v. Ducharme*, 774 F.2d 1491 (9th Cir. 1985) (failure to object to prosecutor's improper closing remarks falls short of constitutional prejudice when considered within

11

1  "totality of the evidence").

2  It is apparent that the prosecutor's conduct was not egregious or harmful to
3  petitioner.  The prosecutor did not vouch for Williamson, but simply stated the fact that if
4  Williamson lied, then he would be subject to perjury charges.  An objection thus would have
5  been futile, besides it being a tactical decision on counsel's part not to object.  Petitioner's
6  right to effective assistance of counsel was not violated as to this claim, so the state courts'
7  rejection of it was not contrary to, or an unreasonable application of, clearly established
8  Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  September 24, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\JOHNS018.RUL.wpd